McAuley v. Siscoe.

No. 23,378.

JOHN W. McAULEY, *Appellee*, v. CLYDE F. SISCOE, *Appellant,* et al.
(MARY H. BOENER, as Executrix, etc., *Appellee.*)

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Letterpress Copies of Correspondence Between a Deceased Business Man and His Client Improperly Rejected.* Correspondence between a deceased business man and his client for whom he had made loans, consisting of letterpress copies of his letters, and replies thereto, such letterpress copies having been shown to have been in the handwriting of such deceased person, held to be competent evidence.

2. SAME—*Demurrer to Evidence Properly Overruled.* No error was committed in overruling the demurrer of .the defendant, Clyde F. Siscoe, to the plaintiff's evidence and to the evidence of defendant, Mary Boener.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed March 11, 1922. Reversed.

*Lee Bond,* and *M. N. McNaughton,* both of Leavenworth, for the appellant.

*Ord Clingman, J. Q. A. Norton,* and *Walter G. Thiele,* all of Lawrence, for the appellees.

The opinion of the court was delivered by

WEST, J.: The only questions presented by this appeal concern the competency of certain evidence and the overruling of demurrers to evidence.

Ernest F. Siscoe died September 27, 1904, in Leavenworth county, leaving a will devising all of his estate to William T. Sinclair of Lawrence, in trust, certain parts of the estate to be conveyed to each of the testator's children after the lapse of ten years, the trustee to make the conveyances. Eugene O. Siscoe was one of the children. August 25, 1905, Eugene and wife, and Wm. T. Sinclair, trustee under the will, made a mortgage to E. W. Sanborn of Chautauqua county, New York, for $1,000, due in five years at six per cent, payable semiannually. About August 1, 1906, Eugene O. Siscoe and brother Clyde entered into negotiations which early in August resulted in the purchase by Clyde of the real estate involved in this action. This deal involved a five-thousand-dollar note and mortgage made by Clyde F. Siscoe, claimed to have been purchased by John W. McAuley who alleged that he purchased from E. O. Siscoe when there was $1,000 due on them. The petition to recover on this note set up the provisions of the will of Ernest F. Siscoe, the trusteeship of Wm. T. Sinclair and his death .and prayed for the appointment of his successor.

The defendant, Hannah Lane, filed an answer and cross-petition admitting the plaintiff's allegations except that the note sued on by the plaintiff was superior to hers. She set up the thousand-dollar note made August 25, 1905, by Eugene O. Siscoe and wife and Wm. T. Sinclair to E. W. Sanborn, and alleged that he, by John R. Sanborn, sold and transferred it to her and asked judgment. During the pendency of the suit Hannah died and her executor was substituted. Eugene O. Siscoe and wife were served, but made no appearance. A. A. Bowen was appointed the successor of Sinclair and alleged in his answer that he had no interest except as trustee, and prayed for directions.

Clyde F. Siscoe's answer denied generally, but admitted the execution and delivery of the note and mortgage set up by the plaintiff and alleged that when it was made Wm. T. Sinclair was the agent of Eugene O. Siscoe; that the note was made payable at the office of Wm. T. Sinclair; that he paid the installments thereon up to August to Wm. T. Sinclair who accepted the payments as agent of Eugene O. Siscoe, giving up the cancelled coupons, and that in August, 1907, Clyde F. Siscoe paid Wm. T. Sinclair $4,000 as such agent, which was credited on the note, and until the 4th of August, 1912, he continued to pay the interest due on the balance of the note and paid fifty dollars a year, semiannually, which payments were made to Sinclair as agent, upon his demand, the payments being made at his office. He alleged that August 12, 1912, there was due on the note $25 which was paid to him, Wm. T. Sinclair, in full satisfaction; that Sinclair was then the duly authorized and acting agent to receive such money. He alleged that if the assignment set up in the plaintiff's petition was made it was irregular and void for certain reasons. He asked that Bowen, as trustee, make a deed to the property to him.

To this answer the plaintiff replied, alleging that he did not know whether Sinclair acted as the agent of Eugene O. Siscoe in making the note sued on; did not know whether Sinclair received the money paid Eugene by Clyde; and demanded strict proof determining such agency. He alleged that if Clyde F. Siscoe made any payments to Wm. T. Sinclair they were made voluntarily; that he requested Sinclair to forward them to the plaintiff and procure coupons from him. He denied that Sinclair was agent of the plaintiff for the purpose of collecting the thousand dollars, and alleged that Sinclair had no authority to collect such sum or receive the payments from the plaintiff.

Clyde F. Siscoe replied to the answer and cross-petition of Hannah Lane, denying her allegations generally but admitting the execution of her note and mortgage, and alleged that he bought the property from Eugene O. Siscoe and wife in 1916, when there was due thereon $1,025; that Wm. T. Sinclair was then agent of E. W. Sanborn, who was then the owner of the note; that August 4, 1906, Clyde F. Siscoe paid to Sinclair, authorized agent of Sanborn, $1,025, the amount due in full. That if the note and mortgage were assigned it was after the note had been paid, and that he had no knowledge of such assignment.

At the conclusion of the trial the court sustained the objection made to certain letters and documents offered by Clyde F. Siscoe to show agency, holding that McAuley was the holder and owner of the note and mortgage and that defendant Boener was the holder of the other note set out in her answer and cross-petition.

Clyde F. Siscoe filed a motion for a new trial, which was overruled, and he it is who appeals.

It is first claimed that carbon copies of certain letters were wrongfully received in evidence. On behalf of the defendant R. C. Manley was called, who testified that he knew Mr. Sinclair about 25 years, was administrator of his estate, and as such had in his possession numerous files and papers pertaining to his business. Referring to page 907 of letter file "P" he was asked whose handwriting it was and said in his opinion it was Mr. Sinclair's signature and writing; that he thought he was familiar with it; and then the letter on that page was offered in evidence. It was dated April 24, 1909, addressed to E. O. Siscoe and stated that—

"The best I have been able to do on the one thousand dollars $1,000 balance of your mortgage from Clyde is nine hundred fifty dollars $950. If you desire to assign the mortgage to me on those terms I will send you assignment for execution."

Another letter of May 7, 1909, purporting to cover the assignment was received in evidence. Then there were letters purporting to be from Sinclair to McAuley and from McAuley to Sinclair, introduced in evidence. One letter of June 29, mentioned the mortgage of Clyde's for $1,000. It was addressed to McAuley: "If you would like the Siscoe mortg I would take in exchange two of your mortgages . . ." A letter from the plaintiff to Sinclair of July 2, 1909, stated that either the Siscoe or Jones mortgage would be acceptable and that he would leave the choice with Sinclair. A letter

from Sinclair of July 15, to McAuley, stated: "I enclose asst. to you from Eugene O. Siscoe of the Clyde F. Siscoe mtg.", and similar references were made in various other letters. It seems that the court afterwards ruled out these letters, and the defendant, Clyde F. Siscoe, complains of this ruling, and argues that they were competent and if they had been received and considered, the court would have found that Sinclair was acting as agent for the defendant, Eugene O. Siscoe, when the note and mortgage were made. This correspondence tended to show a continuing agency and if competent it should have been received.

Modern ways of doing business and modern inventions have necessarily modified the rigidity of ancient rules of evidence touching correspondence. We know that letterpress copies like carbon copies are mechanical impressions of original letters taken by pressure while the ink is susceptible of being sufficiently pressed on the copy to be legible. If a relevant letter sufficiently shown to be in the handwriting of Mr. Sinclair had been exhibited no doubt of its competency could arise and there is no reason why letterpress copies of such original letters found in his letter book should not be received with equal probative effect. True, the fact of stamping and mailing are assumed rather than proved, but when numerous replies were introduced, showing that they were in response to the originals of these very letters they all became convincing to the ordinary person of their own genuineness and of their own transmission, and they are and should be no less convincing to the court. In *Glass Co. v. Pierce,* 87 Kan. 548, 125 Pac. 108, it was held that a carbon copy of a typewritten letter is an original, and "either impression is primary evidence of the contents of the letter." (Syl.) It was said in the opinion:

"It is not material which one is mailed and which one retained by the writer and either one may be offered as primary evidence of the contents of the letter." (p. 549.)

This was followed in *Barker v. Railway Co.,* 88 Kan. 767, 770, 129 Pac. 1151; *Wilkes v. Coal Co.,* 95 Kan. 493, 148 Pac. 768, and *Enright v. Railway Co.,* 96 Kan. 546, 152 Pac. 629. The letterpress copies being competent, letters in reply thereto were likewise competent. (*Huber v. Claudel,* 71 Kan. 441, 80 Pac. 960; 3 Wigmore on Evidence, § 2104; 22 C. J. 908.)

Complaint is also made that the court overruled Clyde F. Siscoe's demurrer to the plaintiff's evidence and his demurrer to the evi-

dence of defendant, Mary Boener. The record indicates that the evidence thus objected to was such as should have been considered by the court, and without giving any intimation as to its effect, it. is held that no error was committed in overruling the demurrers.

For the error in striking out the correspondence, the judgment is reversed and the cause remanded for further proceedings in accordance herewith.